UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ZORAN DJORDJEVIC,                                    MEMORANDUM & ORDER

              Plaintiff,                            11-CV-3287 (NGG)

-against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,*

              Defendant.

------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Zoran Djordjevic brings this action under 42 U.S.C. § 405(g) seeking judicial review of the denial of his claims for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA"). (Compl. (Dkt. 1).) Djordjevic moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and asks the court to reverse the determination of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), finding him not disabled. (Pl. Mot. (Dkt. 18).) The Commissioner agrees that remand is appropriate but opposes Djordjevic's motion. (Def. Mot. (Dkt. 16).) For the reasons set forth below, Plaintiff's motion is GRANTED; the Commissioner's motion is DENIED; the Commissioner's decision as to disability is REVERSED and the case is REMANDED solely for the computation of damages.

I.    **BACKGROUND**

Djordjevic brings this action against the Commissioner to contest his denial of SSDI and SSI benefits. Djordjevic has previously been the subject of two hearings before an

---

    *    Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, is hereby substituted as Defendant.

1

Administrative Law Judge ("ALJ") on the issue of his disability. Djordjevic first applied for both forms of benefits on March 17, 2003, claiming disability since his fall down a flight of stairs at work on January 7, 2001. (Administrative Transcript ("Tr.") (Dkt. 15) at 40-42.) After conducting its first hearing, the ALJ found Djordjevic not disabled in a decision issued on August 24, 2006. (Id. at 12-23.) On July 11, 2007, the SSA's Appeals Council declined to review the ALJ's determination. (Id. at 5-8.)

Djordjevic appealed the ALJ's decision to the Eastern District of New York, where, on consent of the parties, the case was remanded to the Appeals Council. (Id. at 597-600.) The Appeals Council issued an order remanding the case back to the ALJ (id. at 604-05), which held an additional hearing on August 6, 2009 (id. at 761-861). On March 5, 2010, the same ALJ issued a second decision finding Djordjevic not disabled. (Id. at 551-66.) This decision became final when the Appeals Council again declined to review the ALJ's ruling. (Id. at 506-08.)

On July 8, 2011, Djordjevic filed the instant case. (Compl.) On February 2, 2012, the Commissioner filed a motion to remand to the SSA, and on the same day Djordjevic filed a cross-motion for judgment on the pleadings seeking a determination that he is disabled. (Def. Mot. (Dkt. 16); Pl. Mot. (Dkt. 18).) Briefing was completed on February 2, 2012. (Def. Mem. (Dkt. 17); Pl. Mem. (Dkt. 19); Def. Opp'n (Dkt. 20); Pl. Sur-Reply (Dkt. 21).)

## II.   STANDARD FOR REMAND

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v.

Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id. The court may also reverse the Commissioner's determination of disability and remand solely for the calculation of damages where appropriate. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

Pursuant to the "Treating Physician Rule," opinions from treating sources should be given controlling weight unless the opinions are "inconsistent with the other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c)(2); see also Schisler v. Sullivan, 3 F.3d 563, 568-69 (2d Cir. 1993) (holding that regulations concerning the weight to be given to treating physicians' opinions were binding on the courts and not merely on administrative proceedings). Even when a treating physician's opinion is inconsistent with other substantial evidence, the ALJ must consider the substance of the following factors in determining the appropriate weight to afford the opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998). Furthermore, the ALJ must give "good reasons" for not crediting the opinion of a treating physician. Clark, 143 F.3d at 115 (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Additionally, the ALJ may not substitute his "own

assessment of the relative merits of the objective evidence and subjective complaints for that of the treating physician." Garcia v. Barnhart, No. 01-CV-8300 (GEL), 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

Though legal error by the Commissioner requires remand regardless of whether its decision is supported by substantial evidence, the standard to reverse the Commissioner's determination finding the plaintiff not disabled and remand solely for calculation of damages is higher. This remedy should only be used when the record "leads inexorably to a single conclusion" as to the Plaintiff's disability. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). Even where the ALJ has failed to adequately develop the record or adequately explain its decision, the most common remedy is to remand the case to the Commissioner so it can more fully explain its reasoning and, if necessary, collect further evidence. See Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999); Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

## III. DISCUSSION

For the second time in this court, both parties agree that remand is necessary because the ALJ improperly applied the treating physician rule, which requires the ALJ to give controlling weight to a plaintiff's treating physician or a detailed explanation of why it declined to do so, see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1527(d)(2)-(6), 416.927(d)(2)-(6). (Def. Mem. at 33; see Pl. Mem. at 13-14.) The parties dispute, however, the appropriate scope of remand. The Commissioner insists that substantial evidence supports the ALJ's decision, and that the case should therefore be remanded for a new determination of Djordjevic's disability. (Def. Mem. at 30-31.)

Djordjevic argues that remand is only necessary to compute damages because the record is fully developed and compels the conclusion that he is disabled. (Pl. Mem. at 13-14.) As noted

4

above, the test of whether the case should be remanded solely for a calculation of damages is a demanding one. Only if the administrative record leads "inexorably" to the conclusion that the plaintiff is disabled can this court then reverse the Commissioner's finding of no disability. That standard has been met here.

This decision is not made lightly. Determinations by the Commissioner are entitled to substantial deference based on constitutional principles, and this court is hesitant to disturb them. In this particular case, however, the record indicates overwhelmingly that Djordjevic is disabled, and that the justifications offered by the ALJ in its order and the Commissioner in its briefs are unpersuasive.

### A. Evidence From Djordjevic's Treating Physician

It is undisputed that the Commissioner must give controlling weight to the treating physician's opinions about the nature and severity of a plaintiff's impairments, so long as they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). And though the ultimate determination of disability is reserved to the Commissioner, id. §§ 404.1527(d), 416.927(d), that does not diminish the weight owed to the treating physician's opinions.

On January 7, 2001, Plaintiff fell down a flight of stairs while at work, fractured his right ankle, and injured his back and right shoulder. (Tr. at 177, 798.) He was taken to the emergency room at Lenox Hill Hospital, where X-rays were taken. (Id. at 645.) Plaintiff's ankle was splinted, and he was given crutches. (Id. at 645.) Surgery was postponed due to swelling. (Id. at 204.)

Dr. Christopher Kyriakides's records and testimony conclusively indicate that he

5

considered Djordjevic to be disabled throughout the entire course of treatment.[1] Djordjevic first went to Dr. Kyriakides for treatment on March 9, 2001, at Sports Medicine & Orthopaedic Rehabilitation ("SMOR"). (Id. at 181-82.) During his initial evaluation, Dr. Kyriakides diagnosed Djordjevic with a right ankle fracture, left lumbosacral derangement with sprain, and bilateral shoulder impingement. (Id. at 182.) Treatment included physical therapy with an aquatic regimen and range of motion exercises. (Id.) Dr. Kyriakides labeled him "totally disabled" at the time. (Id.)

In April and May of 2001, Dr. Kyriakides concentrated on trying to accurately diagnosis Djordjevic's injuries. (Id. at 316-17.) Djordjevic's symptoms at that time included spasms, restricted range of motion, somatic dysfunctions and shoulder impingement on the right side. (Id. at 317.) When Djordjevic visited Dr. Kyriakides in July, he had developed cervical spine pain in addition to his previous symptoms. (Id. at 318.) In Dr. Kyriakides's opinion, Djordjevic remained totally disabled. (Id.)

Through the end of 2001, Djordjevic's symptoms worsened and he was in increasing amounts of pain. (Id. at 319, 322.) During this time, and into 2002, Dr. Kyriakides continued to request that Djordjevic have MRI's and EKG's performed. (Id. at 318, 319, 322.) By April 17, 2002, an MRI had been performed on Djordjevic's lumbosacral spine, which revealed a herniated disk. (Id. at 323.) His other symptoms had not dissipated, and he remained totally disabled. (Id. at 324.)

In a "formalized re-evaluation" on July 30, 2002, Djordjevic continued to complain of pain in his neck, back, shoulder, and ankle, and exhibited a severely antalgic gait while showing no improvement of his other symptoms. (Id. at 341.) Dr. Kyriakides remained of the opinion

---

[1] Both parties agree that Dr. Kyriakides is Djordjevic's treating physician. (Pl. Mem. at 13; Def. Mem. at 32.)

that Djordjevic was totally disabled. (Id.) By September of 2002, Djordjevic's right shoulder had become "far worse." (Id. at 343.) On November 26, his right shoulder exhibited a strongly positive impingement sign, positive atrophy, and restricted range of motion in the cervical and lumbosacral spines. (Id. at 345.) He remained totally disabled. (Id.)

In September of 2003, Dr. Kyriakides, having transferred to New York Orthopedic Surgery & Rehabilitation ("NYOSR"), noted some improvement in Djordjevic's condition as a result of the ongoing physical therapy. (Id. at 684.) However, there was continuing dysfunctional pain in the cervical and lumbosacral spines, as well as increased tightness in the lumbosacral spine. (Id.) Despite the progress made, Djordjevic remained totally disabled. (Id.) Through November of 2004, Djordjevic showed little, if any, improvement. (Id. at 684-87.)

On November 12, 2004, Dr. Kyriakides examined Djordjevic with the aid of three new MRI's—one of the right shoulder, one of the lumbar spine, and one of the cervical spine. (Id. at 687.) These revealed impingement with a possible labral tear in the shoulder, herniated disks in the lumbar spine, and herniations in the cervical spine. (Id.) In a questionnaire reflecting the November 12 visit (id. at 367-74), Dr. Kyriakides opined that Djordjevic could sit for two hours and stand/walk for zero to one hour in an eight-hour workday (id. at 369).

There was no improvement in Djordjevic's condition by February 1, 2005, and according to Dr. Kyriakides, he remained totally disabled. (Id. at 689.) One year later, on February 2, 2006, Dr. Kyriakides noted that Djordjevic had three bulging discs in the lumbar spine and pain that was unresponsive to Ultracet, a powerful pain medication. (Id. at 691.) Due to Djordjevic's heightened symptoms over the prior four months, Dr. Kyriakides noted that spinal surgery should be considered. (Id.) In his opinion, Djordjevic was totally, permanently disabled. (Id.)

In September of 2006, Djordjevic's condition had deteriorated still further. (Id. at 692.) He had multiple herniations that were causing nerve damage, as well as impingement with tears in his right shoulder. (Id.) Dr. Kyriakides stated that: "There has been an ongoing deterioration for as long as I have known this patient . . . ." (Id.) Djordjevic remained permanently and totally disabled. (Id.) By April 5, 2007, Djordjevic's neck and back pain had intensified and he had a total of six herniated discs. (Id. at 693.)

In January 2008, Djordjevic had continued pain and weakness with "radiating symptoms stemming from his neck and back and into his right shoulder and ankle." (Id. at 694.) Dr. Kyriakides felt that trigger point therapy into the spine was necessary (id.), and Djordjevic handled the procedure well on several occasions (id. at 695-96). Though at first the trigger point injections provided "very good benefits" (id. at 697), they soon provided only "temporary and transient benefit" (id. at 698).

Djordjevic next saw Dr. Kyriakides in May 2010. (Id. at 537.) At that time, Djordjevic had ongoing daily pain and swelling of his right ankle, as well as pain in his right shoulder and spine. (Id.) He had limited mobility of the cervical spine and lumbar spine, severely limited mobility in the right shoulder, and a very slow and antalgic gait. (Id.) Djordjevic continued to deteriorate into November, when Dr. Kyriakides found significant spasms in his neck and back and further inhibitions in his mobility and range of motion. (Id. at 534.) Dr. Kyriakides considered him "totally permanently disabled." (Id.)

### B. Evidence From Other Physicians

Dr. Dana Mannor, a board-certified orthopedic surgeon, began treating Djordjevic shortly after his injury and evaluated Djordjevic on numerous occasions from 2001 through 2004. Djordjevic first visited Dr. Mannor on January 8, 2001, the day after his accident. (Id. at 645.)

X-rays showed distal fibular and posterior malleolar fractures, a small nondisplaced fragment, and widening of the medial joint and interosseous spaces with some slight talar subluxation—in lay terms, his ankle was broken and severely injured. (Id. at 645-46.) She then performed a right ankle open reduction and internal fixation on January 19, 2001. (Id. at 204-06.) Two follow-up sessions showed the hardware in place and Dr. Mannor judged Djordjevic to be ready for physical therapy. (Id. at 654, 679.)

After several weeks of consultation with both Dr. Mannor and Dr. Kyriakides, Djordjevic underwent a second operation on May 29, 2001, to have the screw in his ankle removed. (Id. at 277-78.) Djordjevic visited Dr. Mannor on several occasions after the surgery to check his progress. (Id. at 659, 648, 658.) At these sessions, Djordjevic showed some improvement—Dr. Mannor described him as "doing well" and noted only minor stiffness on one occasion. (Id. at 659, 658.) On September 7, 2001, Dr. Mannor removed the fibular plate from Djordjevic's right ankle. (Id. 196-98.) Through the end of 2001, Dr. Mannor reported steady progress with Djordjevic's ankle, and on one occasion Djordjevic even described himself as "pain free." (See id. at 650, 649, 656, 663.)

Through the first six months of 2002, Djordjevic reported only minor and periodic back and ankle pain to Dr. Mannor. (Id. at 662-63, 665.) In the latter half of 2002, Djordjevic reported more pain during his visits to Dr. Mannor, especially during humid weather. (Id. at 660, 668, 669.) Dr. Mannor diagnosed Djordjevic with lumbar radiculopathy, right rotator cuff tendinitis, and a cervical injury. (Id. at 660.)

In 2003 and 2004, Djordjevic reported to Dr. Mannor that his episodes of pain were more frequent, though certain types of treatment were somewhat effective. (Id. at 670, 672-73, 674-75, 678, 680-81.) During that time, Dr. Mannor consistently diagnosed Djordjevic with

some combination of right shoulder impingement syndrome, cervical herniated discs, lumbar radiculopathy/herniated discs, and right biceps and right rotator cuff tendinitis. (Id.) During this time, Djordjevic did not report any pain in his surgically repaired ankle to Dr. Mannor. (Id. at 673, 674.)

Dr. B.A. Zikria, a board certified surgeon, conducted an independent examination of Djordjevic on June 11, 2001, at the behest of the State of New York Insurance Fund. (Id. at 177-80.) Though he could not examine Djordjevic's ankle because it was still dressed after surgery, Dr. Zikria noted that there was tenderness in the right shoulder tendons and restricted range of motion. (Id. at 178.) Moreover, Djordjevic could not raise his right leg to within normal limits and there was some tenderness in the spine with spasms in the paraspinous muscle. (Id. at 179.) Dr. Zikria concluded that Djordjevic was totally disabled. (Id.)

Dr. Zikria examined Djordjevic again on December 11, 2001. (Id. at 173-76.) He found some tenderness in the ankle and shoulder, with full range of motion in the right shoulder though slight pain at the limits of the range. (Id. at 175.) There were no spasms in the paraspinous muscles but he was not able to fully straighten his right leg. (Id.) Dr. Zikria diagnosed Djordjevic's disability at that time as "moderate." (Id.)

Dr. Charles Kaplan, a physical therapist who worked with Dr. Kyriakides at SMOR, examined Djordjevic on November 7, 2001, as part of his physical therapy treatment. (Id. at 320-21.) Dr. Kaplan diagnosed cervical spasm, cervical radiculopathy, lumbar spasm, lumbar radiculopathy, right ankle fracture, and right shoulder impingement as a result of Djordjevic's accident. (Id. at 320.) In Dr. Kaplan's opinion, Djordjevic was totally disabled. (Id. at 321.)

Dr. Lester Lieberman, a board certified orthopedic surgeon, conducted an independent examination of Djordjevic on December 12, 2002, on behalf of the Workers' Compensation

Board. (Id. at 189-91.) In his opinion, Djordjevic had full range of motion in his right shoulder and did not show any spasm or tenderness in the spine. (Id. at 190.) Dr. Lieberman diagnosed a cervical sprain, a lumbar sprain, and a right shoulder sprain, and concluded that the disability was "moderate." (Id. at 191.)

Dr. Mohamed Nour, a board certified orthopedic surgeon, examined Djordjevic on March 31, 2005, at the request of Djordjevic's attorney. (Id. at 24A-24M.) At that time, Dr. Nour made the following conclusions based on his examination and a number of MRI's, X-rays, and EMG's: "[I]t is my opinion that the patient is permanently totally disabled. . . . [T]he patient has sustained significant limitations of the use of the neck, lower back, right shoulder, and right ankle, and will continue to experience pain and limitations of the use of these areas resulting in substantial and permanent total disability." (Id. at 24E.)

On December 4, 2008, Dr. Nour noted that Djordjevic had pain associated with moving his cervical spine, right shoulder, lumbar spine, and right ankle. (Id. at 704-05.) Moreover, he believed that Djordjevic should be limited to between zero and one hour of sitting and between zero and one hour of standing and walking in a work day. (Id. at 709.) At the examination, Djordjevic had trouble getting dressed and undressed and getting on and off the examination table. (Id. at 705.) Once again, after reviewing a number of X-rays and MRI's, Dr. Nour opined that Djordjevic was "totally and permanently disabled." (Id. at 705-06.)

Dr. Stanley Mathew, board certified in physical medicine and rehabilitation, examined Djordjevic on March 28, 2009, at the request of the ALJ in this case. (Id. at 715-25.) Dr. Mathew gave Djordjevic a "poor" prognosis, noted his "chronic pain," and stated: "[T]he claimant is severely limited for walking, standing, climbing, lifting, squatting, and bending. He has severe limitations with right upper extremity overhead activities." (Id. at 718.) In Dr.

11

Mathew's opinion, Djordjevic was capable of sitting for four hours, standing for two hours, and walking for two hours in an eight hour work day. (Id. at 720.)

C.   **The ALJ's Opinion**

On March 5, 2010, the ALJ released its second opinion finding Djordjevic to be not disabled. (Id. at 551-66.) The ALJ's opinion offered five reasons for ignoring Dr. Kyriakides's diagnoses and finding Djordjevic to be disabled: (1) the contrary testimony of Dr. Spindell, the SSA medical expert; (2) Dr. Kyriakides's treatment notes did not show any evidence of "neurological deficits"; (3) the ALJ's belief if Dr. Kyriakides's statements of residual functional capacity were accurate, that Djordjevic should be (but is not) bedridden; (4) Djordjevic was not taking strong pain medications; and (5) Djordjevic was not using an assistive device, such as a cane or walker. (Id. at 562-63.) These reasons, although inconsistent with Dr. Kyriakides's testimony, do not amount to the "substantial evidence" needed to overcome the weight of his opinions. See 20 C.F.R. § 404.1527(c)(2).

First, the ALJ relied heavily upon Dr. Edward Spindell's testimony; indeed, he was the *only* medical source whose testimony was not at least partially disregarded. (Tr. at 562-63.) The ALJ should not have placed such an inordinate amount of weight on his testimony because Dr. Spindell has never physically examined Djordjevic. (Id. at 770.) Numerous courts have indicated that the testimony of non-examining physicians, even SSA medical experts, should not be given much weight. See Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability."); Brown v. Comm'r of Soc. Sec., No. 06-CV-3174 (ENV) (MDG), 2011 WL 1004696, at *4 (E.D.N.Y. Mar. 18, 2011) ("The

12

law is clear, however, that onetime assessments should not be considered 'substantial evidence' under the treating physician rule . . . .").

Second, the ALJ's belief that Dr. Kyriakides's notes did not show any neurological deficits, even if true, does not demonstrate that Djordjevic did not suffer from such deficits. The record indicates that multiple doctors found extensive neurological weakness and impairment of Djordjevic's gait. (See, e.g., Tr. at 175 (notes of Dr. Zikria, Dec. 17, 2001); id. at 716 (notes of Dr. Mathew, Mar. 28, 2009); id. at 537 (notes of Dr. Kyriakides, May 6, 2010).)

Third, the ALJ dismissed Dr. Kyriakides's opinion that Djordjevic could not spend more than two hours sitting and one hour standing in an eight hour day. (Id. at 562-63.) Based on that opinion, the ALJ felt that Djordjevic should be bed-ridden, which he is not. (Id.) Because Djordjevic testified that he occasionally spent part of his day running errands, going to the gym, and shopping, the ALJ concluded Dr. Kyriakides could not be correct in his diagnoses. (Id.) However, this line of reasoning is unpersuasive and has been rejected by other courts and the SSA Appeals Council in this very case.

Here, the impairment questionnaire clearly indicated that Dr. Kyriakides's opinion that Djordjevic could not spend substantial time on his feet and was totally disabled was in the context of a "competitive five day a week work environment on a sustained basis." (Id. at 381.) The ALJ completely ignored this context when it compared Djordjevic's ability to perform minimal daily activity with Dr. Kyriakides's diagnoses. As other courts have held, it is inappropriate for an ALJ to use a plaintiff's testimony of his daily activities to compare it to his physician's testimony regarding residual functional capacity. See, e.g., Scandura v. Astrue, No. 07-CV-5098 (RJD), 2009 WL 648611, at *9 (E.D.N.Y. Mar. 10, 2009) (holding that ALJ should not have discounted an opinion that might suggest claimant was essentially bed-bound, where

13

"the form . . . involves limits to the plaintiff's physical capabilities only in the context of a five day work week").

Moreover, after this case was remanded to the SSA in 2008, the Appeals Council chastised the ALJ for citing Djordjevic's daily activities in its initial decision as a reason for rejecting Dr. Kyriakides's opinion. (Tr. at 605.) It concluded that those activities did not indicate an ability to perform "sustained work activities in a regular work setting on a regular and continuing basis," and instructed the ALJ to provide only "appropriate" grounds for its decisions. (Id.) Yet the ALJ again relied on Djordjevic's testimony of his daily life when making its second determination to discount Dr. Kyriakides's opinion and find Djordjevic not disabled. (Id. at 563.) This was not an appropriate consideration in the first decision, and it was not appropriate in this one.

Fourth, the ALJ used the fact that Djordjevic is "not taking strong narcotic medication but mainly nonsteroidal anti-inflammatory" medications to bolster its contention that Djordjevic was not disabled. (Id. at 562.) But the ALJ failed to identify the relevant time period that Djordjevic used these medications. The record is clear that at certain times Djordjevic *was* taking strong prescription pain-killers. (Id. at 24B (notes of Dr. Nour indicating Djordjevic was taking Ultracet); id. at 174 (notes of Dr. Zikria indicating Djordjevic was occasionally taking Vicodin); id. at 689 (notes of Dr. Kyriakides prescribing Ultracet).) The ALJ's decision to use this evidence to undermine the weight to be placed on Dr. Kyriakides's opinion was therefore flawed.

Fifth, of all the information included in Dr. Mathew's report, the ALJ chose to credit only the fact that Djordjevic was not using an assistive device. (Id. at 563.) While the court does not doubt the accuracy of that statement, it stretches the bounds of "substantial evidence" to argue

that because Djordjevic was not using a cane or walker on the one day he visited Dr. Mathew's office, the ALJ was entitled to disregard the voluminous evidence provided by Dr. Kyriakides. This is especially true given the fact that Djordjevic testified that he did use a cane on some occasions. (Id. at 777-78.)

Ultimately, the ALJ used a combination of Dr. Spindell's testimony and a hyper-selective reading of the additional evidence to find Djordjevic not disabled. As detailed above, the reasons offered for the ALJ's decision simply do not support its finding, either because they are contrary to law or unsupported by the record. If the treating physician rule has any force at all, it compels a finding of disability in this case.[2]

### D. The Commissioner's Reasons for Not Affording Dr. Kyriakides's Testimony Controlling Weight

In its brief, the Commissioner offers additional reasons why the ALJ's determination was supported by substantial evidence. (Def. Mem. at 33-35.) The Commissioner offers two explanations not previously addressed: (1) potential conflicts between the medical notes of Dr. Kyriakides and other doctors between 2001 and 2004; and (2) language from an unnamed doctor's 2009 diagnosis that Djordjevic had "no atrophy, full ranges of motion in his upper extremities except for his right shoulder, full muscle strength except for slightly reduced (4/5) in the right shoulder, and no sensory abnormality." (Id.) These too are unpersuasive.

First, the Commissioner devotes the majority of its brief establishing that the various doctors Djordjevic saw during 2001 and 2002 did not make the exact same diagnoses. Conflicting evidence between the treating physician and other doctors can be significant, but the Commissioner misses the mark here because there is no requirement that the plaintiff be in the

---

[2] It is important to note that Djordjevic is not disabled solely because Dr. Kyriakides asserts he is; the ultimate decision of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Rather, there is insufficient evidence to rebut the doctor's testimony that Djordjevic is disabled, and in the absence of such evidence, the treating physician rule mandates that Dr. Kyriakides's testimony control.

15

same condition every day (and that all diagnoses be identical) to be considered disabled. See, e.g., Richardson v. Barnhart, 443 F. Supp. 2d 411, 422 (W.D.N.Y. 2006) ("The Second Circuit 'has refused to uphold an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings.'" (quoting Rosa v. Callahan, 168 F.3d 72, 81 (2d Cir. 1999))); Ruiz v. Apfel, 98 F. Supp. 2d 200, 208 (D. Conn. 1999) ("The ALJ cannot rely upon temporary relief from some of the symptoms of the plaintiff's mental illness to support his conclusion that [the treating physician's] opinion is not entitled to controlling weight."). Minor discrepancies are insufficient to severely diminish the weight necessitated by the treating physician rule.

More importantly, the Commissioner cannot point to any evidence after 2004 that conflicts with Dr. Kyriakides's opinions. The medical evidence indicates conclusively that Djordjevic's condition has been deteriorating. (Tr. at 692 ("There has been an ongoing deterioration for as long as I have known this patient . . . ." (Sept. 28, 2006)); id. at 698 ("[H]is condition continues to worsen as regards his cervical and his lumbosacral spine." (Sept. 4, 2008)); id. at 534 ("[Djordjevic] is deteriorating since his last examination." (Nov. 23, 2010)).) Thus, it is not surprising that there has been no conflicting evidence since 2004. This only reinforces the weight that should be given to Dr. Kyriakides's opinion. This case has spanned more than a decade; minor differences during the first four years cannot constitute the substantial evidence needed to overcome the treating physician rule, especially in light of Djordjevic's deteriorating condition.

In fact, there are subsequent opinions by other doctors, such as Dr. Nour in 2005 and Dr. Mathew in 2009, that are consistent with a finding of disability. In light of the evidence of Djordjevic's deterioration, opinions of comparatively lesser disability from 2001 and 2002 are

16

hardly probative of his condition. See, e.g., Ligon v. Astrue, No. 08-CV-1551 (JG) (MDG), 2008 WL 5378374, at *12 (E.D.N.Y. Dec. 23, 2008) ("While it is certainly appropriate to consider prior physicians' statements, to give them greater weight than a treating physician's more recent findings without additional explanation amounts to legal error.").

Second, the Commissioner offers a quote without attribution from a 2009 diagnosis to support the ALJ's finding of no disability. The quote comes from Dr. Mathew, who examined Djordjevic on March 28, 2009. (Tr. at 717.) This quotation is problematic for two reasons. For one thing, the ALJ gave little weight to Dr. Mathew's findings, choosing only to credit the observation that Djordjevic was not using a cane in Dr. Mathew's office. (Id. at 563.) Also, the following page of Dr. Mathew's opinion states: "[T]he claimant is severely limited for walking, standing, climbing, lifting, squatting, and bending. He has severe limitations with right upper extremity overhead activities." (Id. at 718.) The Commissioner, just like an ALJ, is not permitted to selectively cite the language most appealing to his case while ignoring the surrounding context. See Gecevic v. Sec'y of Health & Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y. 1995) ("[The ALJ] cannot simply selectively choose evidence in the record that supports his conclusions.").

In short, the record before this court leads inexorably to one conclusion: Djordjevic is disabled. The overwhelming weight of the medical evidence lays the foundation for this, and the deference due to Djordjevic's treating physician establishes it beyond debate. Arguments by both the ALJ and the Commissioner do not persuade this court to the contrary. If the treating physician rule is to have any force at all, it must apply here.

## IV. CONCLUSION

For the foregoing reasons, Djordjevic's motion for judgment on the pleadings is GRANTED. The Commissioner's decision finding Djordjevic not disabled is REVERSED. The case is REMANDED to the Commissioner solely for the computation of damages. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August _1_, 2013

NICHOLAS G. GARAUFIS
United States District Judge